**Horace J. GRIFFIN # N11861, Plaintiff,**

v.

**George E. DeTELLA, et al., Defendants.**

**No. 98 C 618.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 18, 1998.

Horace J. Griffin, Joliet, IL, pro se.

Susan Takata O'Leary of Illinois Department of Corrections, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

When Stateville Correctional Center ("Stateville") inmate Horace Griffin ("Griffin") originally tendered his self-prepared 42 U.S.C. § 1983 ("Section 1983") Complaint charging alleged violations of his constitutional rights by various Stateville officials (beginning at the top with Warden George DeTella), this Court (1) granted Griffin leave to proceed in forma pauperis in accordance with the 1996 Prison Litigation Reform Act ("Act") but (2) noted that Griffin's "sprawling claims" (a) had left open the question whether he had exhausted his administrative remedies as required by the Act and (b) had also left the precise nature of his complaints un-

defined. For that reason this Court concluded that a *Spears* hearing [1] might be helpful in both of those respects.

Magistrate Judge Rebecca Pallmeyer has since conducted such a hearing with Griffin's full participation and, after careful analysis, has determined that as a matter of law Griffin is not entitled to remain in court on any of his claims. That determination has been embodied in Magistrate Judge Pallmeyer's August 19, 1998 Report and Recommendation ("Report," a copy of which is attached to this opinion). In response to Magistrate Judge Pallmeyer's notification that he had a limited time within which to file objections to the Report (see Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1) and *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir.1995)), Griffin has provided a timely handwritten missive covering something over 18 pages.[2]

This Court has waded through Griffin's purported objections to the Report with some difficulty, created both by Griffin's opaque style and by his tendency to digress from the issues carefully marked out by the Report. This Court has nevertheless scrutinized Griffin's proffer through the generous lens prescribed for pro se filings by *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), but even with the benefit of that broad-gauge reading the Griffin submission does not provide any effective response to Magistrate Judge Pallmeyer's analysis and conclusions. Instead Griffin has really rehashed his claims without coming to grips with the legal problems that led to the Report's conclusions.

This Court therefore accepts in their entirety both the findings and recommendations made by Magistrate Judge Pallmeyer (see 28 U.S.C. § 636(b)(1)(C)), all of which reflect the kind of careful attention to factual matters and legal issues that reconfirm the good judgment of the two Illinois Senators in having recommended her, and the President in having nominated her, for a judgeship on this District Court. Each of Griffin's claims is deficient as a matter of law for the reasons well stated in the Report. This action is dismissed with prejudice, and its dismissal causes Griffin to be charged with one "strike" for purposes of 28 U.S.C. § 1915(g).[3]

### REPORT AND RECOMMENDATION

PALLMEYER, United States Magistrate Judge.

Plaintiff Horace J. Griffin, an inmate at Stateville Correctional Center ("Stateville"), has filed a *pro se* complaint with this court seeking damages and other relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights by various officials at the Stateville Correctional Center. Defendants consist of Warden George E. DeTella, Adjustment Committee Chairman A. Johnson, Correctional Officer S. Ritche, and Superintendent Griffin. In his February 5, 1998 opinion, District Judge Milton I. Shadur granted Plaintiff leave to proceed *in forma pauperis*, but observed that Griffin's "sprawling claims" leave open the question of whether he has exhausted his administrative remedies and "leav[e] the precise nature of his complaints undefined." *Griffin v. DeTella*, No. 98 C 618, 1998 WL 67617, *2 (N.D.Ill. Feb. 9, 1998). Judge Shadur concluded that a *Spears* hearing might be helpful in clarify-

---

1. See *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996), describing the procedure that had earlier been sanctioned in the Fifth Circuit's opinion in *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985). That procedure with some modifications has been adopted by this District Court, to be implemented by its capable Magistrate Judges.

2. In addition, just before the issuance of this opinion this Court received the most recent of Griffin's unbidden periodic self-prepared submissions that he labels "Motions To Update." That practice, begun well before issuance of the Report and continued by Griffin despite several reminders that such efforts contributed nothing to the litigation other than to bulk up the file,

involves Griffin's airing of a series of gripes of various kinds based on asserted events taking place later than those set out in his Complaint and dealt with in the Report. None of those submissions plays any role in the disposition of this action.

3. Griffin is cautioned to keep that statute and its consequences in mind in considering the possibility of an appeal from this decision or the possible institution of other litigation. This Court has no desire to chill Griffin's access to the courts in any way—this reference is simply intended to alert Griffin to the fact that Congress has included that statute as part of the Act.

ing Griffin's claims.[1] This court conducted such a hearing on April 17, 1998, at Stateville Correctional Center. Having heard that testimony, the court recommends that his complaint be dismissed for the reasons set forth below.

## DISCUSSION

Griffin's complaint, as amplified and explained by his hearing testimony, sets forth eight claims against Stateville Warden George DeTella and other officials at Stateville. (*See* the court's summary of his testimony, Transcript of April 17, 1998 hearing (hereinafter, "Tr.") at 41–47.) The court will combine its presentation of the facts surrounding each claim with analysis.

**First Claim: Denial of Access to Legal Papers (June 1997):**

As his first claim, Griffin alleges he was denied access to his legal papers in connection with six pending cases, including three lawsuits in this district, a fourth in the Southern District, a state court appeal, and an appeal to the Seventh Circuit. Specifically, Griffin claims that when he was transferred from Menard Correctional Center to Stateville in June 1997, his personal property was taken from him, and when it was returned on June 9, 1997, some of his legal papers were missing. (Tr. 7–10.) Griffin holds Defendant DeTella responsible for this because, although Griffin complained to DeTella about the missing material, DeTella did not personally investigate the matter. (Tr. 11–14.) He also faults Defendant A. Johnson, the chair of the Adjustment Committee (Tr. 19), who, Griffin believes, should have taken action to correct the problem. As a result of the

1. *See Eason v. Holt,* 73 F.3d 600, 602 (5th Cir. 1996) (describing evidentiary hearings sanctioned in the Fifth Circuit's earlier opinion in *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985)). Prior to March 1996, magistrate judges in this district conducted evidentiary hearings on prisoner civil rights complaints at Stateville Correctional Center and made recommendations on the prisoners' petitions for leave to proceed *in forma pauperis.* Since March 1996, however, *Spears* hearings have been conducted only with the prisoner's consent to permit the magistrate judge to enter a final decision on the *in forma pauperis* petition, including, potentially, dismissal of the action pursuant to the gatekeeper tasks created by the Prison Litigation Reform Act ("PLRA"),

deprivation of his legal papers, Griffin testified, he "had to constantly request to continue and to lengthen up the time of the court." (Tr. at 18.) He acknowledged that the courts always granted him extensions and that none of his cases has been dismissed as a result of the missing material. (Tr. at 18.)

■ The court construes this claim as an allegation of (1) a deprivation of property without due process and (2) a violation of his right of access to the court. With respect to the deprivation of Griffin's property, the court notes that in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that a prisoner who suffers a loss of property as the result of a random, unauthorized act of a state employee is entitled only to an adequate post-deprivation remedy for that loss. In *Stewart v. McGinnis,* 5 F.3d 1031, 1035–37 (7th Cir.1993), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994), the Seventh Circuit held that a prisoner's right to proceed in the Illinois Court of Claims, *see* 705 ILCS 505/8, constitutes an adequate post-deprivation remedy. In any event, to the extent Griffin contends his papers were lost, as opposed to purposefully taken or destroyed, he does not state a claim. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (an official's negligent act causing unintended loss of property does not violate the Constitution). Plaintiff has not stated a claim for due process violation.

■ Nor has Plaintiff alleged a claim for denial of access to the courts. Griffin does have a constitutional right to meaningful ac-

28 U.S.C. § 1915(e)(2)(B). *See generally Hains v. Washington,* 131 F.3d 1248, 1249 (7th Cir.1997) (describing limited consent procedure).

In this case, Judge Shadur has already granted Plaintiff leave to proceed *in forma pauperis* and established a payment schedule as required by PLRA; his February 9, 1998 opinion sets forth the purpose of the hearing as clarification of Plaintiff's allegations. In these circumstances, in spite of Griffin's presumed execution of a limited consent form (the court has been unable to find such a document in the court file), the court concludes that a recommendation concerning his complaint, rather than a final decision, is the prudent course.

cess, *see Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), but this right is violated only if the deprivation he suffered hindered his efforts to pursue a legal claim and resulted in actual injury. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Standing alone, delay and inconvenience do not rise to the level of a constitutional deficiency. *Jones–Bey v. Wright,* 944 F.Supp. 723, 731 (N.D.Ind.1996) (citing *Campbell v. Miller,* 787 F.2d 217, 229 (7th Cir.1986)). At the hearing, Griffin acknowledged that he had been granted extensions by the courts in each of his pending cases. (Tr. 18.) Thus, the alleged deprivation of his legal papers in June 1997 did not constitute a violation of Griffin's right of access to the courts.

■ Finally, even if Plaintiff's allegations stated a claim of actionable wrongdoing, the court notes that he has not linked Defendants DeTella or Johnson with the mischief. He freely acknowledged that he does not know who took his papers—it might even have been another inmate (Tr. 20)—and that his claims against DeTella and Johnson are based upon their failure to take action to correct the problem. Neither DeTella's failure to investigate nor Johnson's failure to impose discipline on any wrongdoers caused the loss of Plaintiff's legal papers. Thus, Griffin has no claim against them arising from such loss. *See Vukadinovich v. McCarthy,* 901 F.2d 1439, 1444 (7th Cir.1990), *cert. denied,* 498 U.S. 1050, 111 S.Ct. 761, 112 L.Ed.2d 780 (1991); *Van Dyke v. Washington,* 896 F.Supp. 183, 188 (C.D.Ill.1995).

This court concludes that Griffin's allegations concerning the loss of legal papers in June 1997 do not state a claim.

### Second Claim: Denial of Access to Legal Papers (December 1997):

Plaintiff alleges he was again deprived of his legal materials when he was moved to a C Grade assignment in December 1997. As Defendants in this claim, Griffin names Warden DeTella, "the supervising official" (Tr. at 18); A. Johnson, the Adjustment Committee chair who "was in authority to direct and have the knowledge to advise DeTella that this is a unconstitutional violation to inmates in seizing their properties" (*id.* at 19–20);

and Officer S. Ritche, the officer who "approached and dialogued and cuffed me and walked me out the cell house without all my property." (*Id.* at 18.) Notably, Griffin does not appear to believe that Officer Ritche himself took the papers.

The court concludes that this claim fails for the same reasons identified above. Griffin has a state law remedy for the deprivation of his property, and an unintended or accidental loss of property would not constitute a due process violation. He has alleged no prejudice to his right of access to the courts, each of which has granted his request for extensions of time. Finally, Griffin has not stated a claim against any of the three persons he holds responsible. He does not allege that Officer Ritche himself took the papers and seeks to hold Defendants DeTella and Johnson responsible only in their supervisory capacities. Like the first claim, Griffin's second claim should be dismissed.

### Third Claim: Excessive Discipline

Griffin's move to C Grade in December 1997 was one of three ways in which he was disciplined for taking too much time in the shower, Plaintiff claims. He alleges this discipline, which consisted of 60 days in C Grade, 60 days' loss of commissary privileges, and 15 days of solitary confinement, was unjust. He has named Warden DeTella as responsible for this alleged violation of his rights. (Tr. at 22–23.)

■ This claim is defeated by two recent Supreme Court opinions. In *Sandin v. Conner,* 515 U.S. 472, 481–83, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that disciplinary measures do not implicate a prisoner's liberty interest unless prison officials restrain the inmate's freedom in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In *Thomas v. Ramos,* 130 F.3d 754, 762 n. 8 (7th Cir.1997) (citations omitted), the Seventh Circuit concluded that demotion to C grade status and loss of commissary privileges does not rise to that level of hardship. In any event, before Griffin can bring a civil rights action challenging his discipline, the underlying disciplinary conviction must be invalidat-

ed or overturned in a state court appeal or *habeas corpus* proceeding. *See Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Stone–Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir.1997). Although Griffin testified that he has filed a grievance with respect to this discipline, his grievance was unsuccessful. (Tr. at 48–49.)

Griffin has no constitutional claim arising from the disciplinary measures imposed in December 1997.

### Fourth Claim: 15 Additional Days in Segregation

At the conclusion of the discipline described above, Griffin was scheduled to be returned to D House. Griffin believes D House is full of "the top gang leaders"; he refused the placement and was subject to an additional 15 days in segregation. (Tr. at 23.) Griffin challenges this discipline as a fourth claim for relief, and names as responsible parties Warden DeTella, Adjustment Committee Chair A. Johnson, and Superintendent Griffin (who assigned Plaintiff to D House). The discipline involved, however, clearly does not meet the standard necessary under *Sandin* to state a constitutional deprivation.

Griffin's fourth claim should be dismissed.

### Fifth Claim: Limited Access to Law Library

Griffin claims that from June 4, 1997 until the April 17, 1998 hearing, he was permitted only intermittent access to the law library. (Tr. 25–29.) He acknowledged, however, that he did get there to prepare materials in the *Griffin v. Rodriguez*, No. 96 C 1721, 1998 WL 111625 (N.D.Ill. March 6, 1998) case and has never missed a court deadline as a result of his difficulties in getting to the library. (Tr. at 29.) In *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Court explained that a prisoner has no right of access to a law library as such, only a right of access to the courts. In order to state a claim for denial of access to the courts, a prisoner must show actual injury. As noted earlier, Griffin has

not alleged any prejudice to his efforts to pursue his legal claims. His fifth claim should be dismissed.

### Sixth Claim: $10 Per Month

Griffin claims he is entitled to deposits in his inmate account of $10.00 per month during his incarceration, and that Warden DeTella suspended this payment during the two 15–day periods of segregation imposed as part of the disciplinary measures challenged in his Third and Fourth claims. (Tr. 30–31.)

This court knows of no basis for a claim that an inmate has a constitutional claim to payment during his incarceration. To the extent the deprivation is an aspect of Griffin's discipline, it may not be challenged as a civil rights violation absent a successful challenge under state court procedures. This claim should be dismissed.

### Seventh Claim: Denial of Commissary Privileges to Endanger Griffin

Plaintiff's seventh claim alleges a conspiracy. Specifically, Griffin alleges that the real purpose for which he was denied commissary privileges (see Third Claim) or funds for use at the commissary (see Sixth Claim) was to endanger him. He reasons that Corrections officials know that if denied commissary privileges, Griffin would be forced to borrow items from his fellow inmates. He would be unable to pay them back, however, with the result that the other inmates would likely assault or potentially murder him. (Tr. 34–38.) Griffin was unable to identify the persons responsible for orchestrating such a scheme (it might be "[s]omeone in Springfield" [Tr. at 37]; "it may be a judge" [Tr. at 38] ), but nevertheless names Warden DeTella as a Defendant. (Tr. at 45.)

Griffin has offered nothing that links DeTella personally with such a fanciful scheme to do him harm. This claim is frivolous within the meaning of 28 U.S.C. § 1915 and should be dismissed.

### Eighth Claim: Denial of Educational and Job Opportunities

As his final claim, Griffin alleges that Warden DeTella failed to "approach"

him to offer him the opportunity to have a job or attend school. (Tr. at 41.) Prisoners have no constitutional right to a prison job, however, nor to education. *Garza v. Miller,* 688 F.2d 480, 485–86 (7th Cir.1982). This claim should be dismissed.

**Plaintiff's Supplemental Filings**

Since the beginning of April, Plaintiff Griffin has submitted at least 12 pleadings he labels "Plaintiff's Up Date Motion," apparently in an effort to amend his complaint to state additional causes of action. Each such document consists of multiple pages and exhibits. Having reviewed Plaintiff's filings, this court concludes they are not properly considered as part of this lawsuit. Many of the documents do not state claims against prison officials at all; for example, Plaintiff complains in numerous motions that the State of Illinois has not yet filed a brief in response to his appeal of his criminal conviction. Plaintiff's pleadings do not supplement or explain the allegations before this court, and to the extent they assert new causes of action, they would appear to be an "end run" around the "three strikes" bar of the PLRA. Although this case remains pending, *compare Griffin v. DeTella,* No. 97 C 4768, 1998 WL 89320 (N.D.Ill. Feb. 19, 1998) (Shadur, J.) (refusing to consider supplementary materials filed by this same Plaintiff following dismissal of an earlier lawsuit), the court nevertheless believes that any new claims Griffin has must be the subject of a new lawsuit and that these supplemental documents should be returned to him.

#### *CONCLUSION*

Griffin's complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim for relief.

August 19, 1998.